## IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

IN THE MATTER OF:  )
    BIANCA ARNESHE ASKEW,  )
                         )

DOROTHY LEWIS,  )

        Petitioner/Appellee,  )    **Fayette Circuit No. 3807**

VS.  )    **Appeal No. 02A01-9708-CV-00201**

JULIE DONOHO,  )

        Respondent/Appellant.  )

FILED

September 23, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

APPEAL FROM THE CIRCUIT COURT OF FAYETTE COUNTY
AT SOMERVILLE, TENNESSEE
THE HONORABLE JON KERRY BLACKWOOD, JUDGE


**MARGARET R. BARR**
Memphis, Tennessee
Attorney for Appellant


**JAMES F. GOODWIN**
Germantown, Tennessee
Attorney for Appellee


**AFFIRMED**


                                 **ALAN E. HIGHERS, J.**


**CONCUR:**

**DAVID R. FARMER, J.**

**HOLLY KIRBY LILLARD, J.**, **concurring separately**
    This case presents for review a dispute over custody of a minor child between a

parent and a nonparent where a prior judicial decree awarded custody to the nonparent. The parent has appealed the trial court's Rule 41.02(2) dismissal of her petition to restore custody of her child. We find that the evidence does not preponderate against the trial court's finding that Donoho failed to satisfy her burden of proof of establishing a material change in circumstances and, therefore, affirm.

## I. Factual and Procedural History

This case involves the custody of Bianca Arneshe Askew (Bianca), who was born August 2, 1990. Julie Donoho (Donoho) is the unmarried natural mother of Bianca and resides in Memphis, Tennessee. Dorothy Lewis (Lewis) is unrelated to Bianca or Donoho. Lewis's only familial relation to Donoho is that she is the cousin of Donoho's uncle's first wife. Donoho first met Lewis during Donoho's pregnancy with Bianca. After Bianca was born, Lewis came over to Donoho's mother's residence, where Donoho was then residing. At that time, Donoho was "going through some problems," including lack of employment, and agreed to have Lewis take care of Bianca.

The dispute over Bianca's custody between Donoho and Lewis originally began in the Fayette County Juvenile Court in 1991, at which time an order was entered transferring the matter to the Shelby County Juvenile Court. Thereafter, on September 17, 1991, the Shelby County Juvenile Court awarded custody of Bianca to Donoho. In February, 1994, Lewis filed a subsequent petition for custody in the Fayette County Juvenile Court. On June 21, 1994, the juvenile court heard testimony from the parties' witnesses. Thereafter, the juvenile court awarded custody to Lewis. On March 5, 1996, Donoho filed a petition for custody. At that time, however, the juvenile court declined to proceed to a hearing on Donoho's petition because it found that Donoho had not been regularly paying child support as previously ordered by that court. On October 2, 1996, Donoho filed a renewed petition for custody. Thereafter, on October 31, 1996, the juvenile court denied Donoho's petition. Donoho then appealed to the Fayette County Circuit Court for a *de novo* trial on Donoho's petition to restore custody.

2

The Circuit Court heard the case on March 25, 1997, at which time Donoho presented her own testimony, in addition to testimony from her pastor, Willie Robison, and from two first cousins, Martrice Hurrah and Karen McCrary. The testimony of Robison, Hurrah, and McCrary essentially supported the position that Donoho is a favorable care provider for her other two children, Jeremy and Aysa. Though one of the other two children, Aysa, is in the legal custody of Aysa's father, Donoho actually cares for Aysa for a majority of the time. Donoho's other child, Jeremy, has been in Donoho's legal custody since December 1996 (before which Donoho's mother had legal custody) and is fully cared for by Donoho.

Donoho testified that her current residence, where she has resided for almost four years, has been a very stable home. She works full-time and has available transportation. She is health conscious and does not smoke or drink. Her mother and grandmother, with whom both Jeremy and Aysa regularly spend time, live on the same street. Donoho's family helps her with Jeremy and Aysa, and likewise would help her with Bianca. Donoho further testified, however, that she failed to maintain regular court ordered child support payments to Lewis during Lewis's custody of Bianca. Instead, she paid all arrearages of such child support at infrequent times when she faced further legal proceedings related to this matter. Furthermore, she failed to maintain regular court ordered visitation of Bianca, though she blames Lewis's hostility towards her for the infrequent exercise of visitation. Lastly, while Donoho would sometimes contact Lewis to notify Lewis that Donoho would not be coming to take Bianca, Donoho would at other times fail even to notify Lewis (and also thereby Bianca) that she would not be coming.

After Donoho presented her evidence and before Lewis presented any further evidence, counsel for Lewis moved for an involuntary dismissal, which the circuit court granted. In the circuit court's order of dismissal, it provided that Donoho's petition to restore custody was dismissed "for her failure to carry her burden of proof of showing 'changed circumstances.'" Donoho appealed to this Court. On appeal, Donoho first asserts that the trial court used the wrong standard of proof for a custody dispute between

3

a parent and a nonparent. More specifically, Donoho asserts that a parent must be awarded custody in any custody dispute between a parent and a nonparent unless the nonparent establishes that substantial harm to the child would result from awarding custody to the parent. Donoho alternatively asserts that, even if the circuit court applied the correct legal standard in determining custody, dismissal was improper because she demonstrated changed circumstances that would require a modification of custody. Lewis asserts the contrary position to both of Donoho's assertions. Therefore, this Court is presented with the following two issues:

> 1. Whether the circuit court utilized the appropriate standard of proof for determining custody between a parent and a nonparent when custody was previously adjudicated and awarded to the nonparent; and
>
> 2. Whether the preponderance of the evidence presented established "changed circumstances" sufficient to warrant a modification in custody.

## II. The Standard of Proof

Generally, in child custody cases, appellate review is *de novo* upon the record, with a presumption of the correctness of the trial court's factual findings. Tenn. R. App. P. 13(d); *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984). The parties' first issue, however, involves a question of law for which the standard of review is *de novo* with no presumption of correctness for the trial court's findings. *Bradshaw v. Old Republic Ins. Co.*, 922 S.W.2d 503 (Tenn. 1996); *Ridings v. Ralph M. Parsons Co.*, 914 S.W.2d 79, 80 (Tenn.1996); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87 (Tenn.1993).

"[P]arental rights constitute a fundamental liberty interest under . . . the Tennessee Constitution." *Hawk v. Hawk*, 855 S.W.2d 573, 579 (Tenn. 1993). Tennessee courts have historically held,

> a parent is entitled to the custody, companionship, and care of the child, and should not be deprived thereof except by due process of law. It is a natural right, but not an inalienable one. The parents are trusted with the custody of the child upon the idea that under the instincts of parental devotion it is best for the child.

*Id.* at 577 (quoting *State ex rel. Bethell v. Kilvington*, 100 Tenn. 227, 236, 45 S.W. 433, 435 (1898). Moreover,

4

> [t]he relations which exist between parent and child are sacred ones.... The right to the society of the child exists in its parents; the right to rear it, to its custody, to its tutorage, the shaping of its destiny, and all of the consequences that naturally follow from the relationship are inherently in the natural parents, and they cannot be deprived of these rights without notice, and upon some ground which affects materially the future of the child.

*Hawk*, 855 S.W.2d at 578 (quoting *In re Knott*, 138 Tenn. 349, 355, 197 S.W. 1097, 1098 (1917). The right of privacy, which stems from the parents' fundamental liberty interest, "protects the right of parents to care for their children without unwarranted state intervention." *Id.* at 579. Under Tennessee law, this right can only be overcome when "substantial harm threatens a child's welfare." *Id.* at 577. Otherwise, the state lacks a sufficiently compelling justification for interfering with the fundamental right of parents to raise their children as they see fit. *Id.* at 577, 582. In a custody dispute between a parent and a nonparent, "a parent cannot be deprived of the custody of the child unless there has been a finding, after notice required by due process, of substantial harm to the child." *In re Adoption of Female Child*, 896 S.W.2d 546, 548 (Tenn. 1995).

In the instant case, Donoho was already deprived of the custody of Bianca by a prior order of the juvenile court, which was not appealed and is not the subject of this appeal. Implicit in this prior order is a finding that Donoho was unable to care for Bianca at that time and of substantial harm to Bianca that would have resulted in awarding custody to Donoho. The juvenile court expressly recognized in its order that Donoho's interest in regaining custody of Bianca was superior to any other right. The court further expressed the intent to restore custody to Donoho *after* she visited and supported Bianca to show that she is a fit parent and is able to care for Bianca.

Where a decree has been entered awarding custody of a child, the judicial system and the parties involved have an interest in the stability and predictability that comes from according the decision the status of a final judgment. Custody orders are *res judicata* upon the facts brought to the trial court's attention at the time the decision was made and are conclusive in a subsequent application to change custody unless some new fact has occurred which has altered the circumstances in a material way. *Young v. Smith*, 193 Tenn. 480, 485, 246 S.W.2d 93, 95 (1952); *Walker v. Walker*, 656 S.W.2d 11, 16 (Tenn.

5

Ct. App. 1983). A trial court may re-examine a custody decision upon the presentation of "facts and conditions which have emerged since the decree [or] new facts and conditions which were not determined or could not be anticipated by the decree." *Dailey v. Dailey*, 635 S.W.2d 391, 393 (Tenn. Ct. App. 1981). In order to modify custody after an initial determination has previously been made, the burden is placed upon the non-custodial party to prove a material change in circumstances. Blair v. Badenhope, 940 S.W.2d 575, 576 (Tenn. Ct. App. 1996). Accordingly, in this modification of custody case, the earlier June 1994 award of custody to Lewis is conclusive as between Donoho and Lewis absent a showing by Donoho of a material change in circumstances.

In order to modify custody as between two parents, the standard of proof requires the non-custodial parent to establish changed circumstances such that substantial harm to the child would result if custody was left with the custodial parent. *Wall v. Wall*, 907 S.W.2d 829, 834 (Tenn. Ct. App. 1995). Because of parental rights, however, this standard has no application in cases wherein a parent seeks modification of a prior award of custody to a nonparent. *See In Re Adoption of Female Child*, 896 S.W.2d 546 (Tenn. 1995). In such cases, the parent must instead simply establish, by a preponderance of the evidence, changed circumstances showing that an award of custody to the parent would no longer result in substantial harm to the child. This standard of proof requires evidence establishing that circumstances, which are relevant to the threat of harm to the child and which weigh against any such harm, have materially changed since the prior award of custody. This standard of proof further requires that this evidence, taken together with all other proof, establishes the absence of substantial harm to the child in the event of custodial modification. In the instant case, the circuit court dismissed Donoho's petition based upon its finding that Donoho failed "to carry her burden of proof showing 'changed circumstances.'" The court, therefore, never reached the second requirement whereby the proof must demonstrate the absence of substantial harm to the child in the event of custodial modification. Therefore, insofar as the court applied a standard of proof, we find no error.

6

### III. The Proof Presented

Rule 41.02(2) of the Tennessee Rules of Civil Procedure, which pertains to involuntary dismissals, provides,

> After the plaintiff, in an action tried by the court without a jury, has completed the presentation of plaintiff's evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. . . . . The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence; in the event judgment is rendered at the close of plaintiff's evidence, the court shall make findings of fact if requested in writing within three days after the announcement of the court's decision.

Tenn. R. Civ. P. 41.02(2). In cases involving a motion for involuntary dismissal pursuant to Rule 41.02(2) of the Tennessee Rules of Civil Procedure, "the trial judge must impartially weigh and evaluate the evidence in the same manner as though he were making findings of fact at the conclusion of all of the evidence for both parties, determine the facts of the case, apply the law to those facts, and, if the plaintiff's case has not been made out by a preponderance of the evidence, a judgment may be rendered against the plaintiff on the merits . . . ." *City of Columbia v. C.F.W. Constr. Co.*, 557 S.W.2d 734, 740 (Tenn. 1977). Therefore, our review of the circuit court's findings of fact is *de novo* upon the record, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984). The circuit court in this case dismissed Donoho's petition because it found that Donoho failed to satisfy her burden of establishing "changed circumstances." Therefore, we must determine whether the preponderance of the evidence establishes a material change in those circumstances that are relevant to and weigh against the threat of harm to Bianca from custodial modification.

Upon review of the parties' briefs, we note that the only factual basis upon which Donoho contends "changed circumstances" was established is Donoho's contention that Lewis has failed to cooperate with Donoho in arranging court ordered visitation. Though Donoho cites *Dalton v. Dalton*, 858 S.W.2d 324 (Tenn. Ct. App. 1993), to support her assertion, we find that *Dalton*, which did not involve visitation, but, instead, involved

7

recalcitrant parents in handling joint custody, does not support her contention. Also, over the course of Donoho's infrequent visitation, Donoho would at times fail to even notify Lewis (and also thereby Bianca) that she would not be coming. Furthermore, she paid substantial arrearages in child support at infrequent times when faced with further pending legal proceedings in this matter. These changes in circumstances, which weigh against Donoho's fitness as a parent and ability to care for Bianca, do not weigh against the threat of harm to the child and do not, therefore, support a finding of material change in circumstances. Upon review of the entire record, we find that the evidence does not preponderate against the trial court's finding that Donoho failed to satisfy her burden of proof of establishing a material change in circumstances.

## IV. Conclusion

Accordingly, the trial court's dismissal is hereby affirmed. Costs of this appeal are taxed to Donoho, for which execution may issue if necessary.

                                                       _____

                                                       HIGHERS, J.

CONCUR:

_____
FARMER, J.

LILLARD, J., Concurring separately

8