IN THE COURT OF APPEALS

AT KNOXVILLE

FILED

November 9, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

GARY WAYNE ROBERTSON,                    ) C/A NO. 03A01-9711-CV-00511
                                         )
          Plaintiff-Appellee,            )
                                         )
                                         )
                                         )
                                         )
v.                                       ) APPEAL AS OF RIGHT FROM THE
                                         ) HAMILTON COUNTY CIRCUIT COURT
                                         )
                                         )
                                         )
                                         )
                                         )
LORI VANHOOSER ROBERTSON,                )
                                         ) HONORABLE W. NEIL THOMAS, III,
          Defendant-Appellant.           ) JUDGE


For Appellant                       For Appellee

LEROY PHILLIPS, JR.                 SHERRY B. PATY
Phillips & Caputo                   Paty, Rymer & Ulin, P.C.
Chattanooga, Tennessee              Chattanooga, Tennessee


O P I N I O N


AFFIRMED IN PART

1

MODIFIED IN PART
REVERSED IN PART
REMANDED                                                    Susano, J.

This is a divorce case. The trial court granted Lori Vanhooser Robertson ("Wife") a divorce on the ground set forth at T.C.A. § 36-4-101(3)[1]; awarded the parties joint custody of their 16-year-old son; ordered Gary Wayne Robertson ("Husband") to pay Wife child support of $387 per month plus 21% of part of Husband's future increases in net income; awarded Wife rehabilitative alimony of $250 per month for 12 months, beginning with the month of October, 1997; divided the parties' property and debts; denied Wife's request for attorney's fees; and made other decrees not relevant to a resolution of the issues now before us. Wife appealed, raising issues that present the following questions for our review:

> 1. Is the trial court's division of the parties' marital assets and marital debts equitable?
>
> 2. Did the trial court err in awarding joint custody rather than joint custody with primary custody in Wife?
>
> 3. Did the trial court err in deviating from the Child Support Guidelines?
>
> 4. Is Wife entitled to periodic alimony *in futuro* rather than the rehabilitative alimony awarded by the trial court?
>
> 5. If rehabilitative alimony is appropriate, is the trial court's award of $250 per month for 12 months adequate?

---

[1]T.C.A. § 36-4-101(3) provides as follows:

> The following are causes of divorce from the bonds of matrimony:
>
>     *    *    *
>
> (3) Either party has committed adultery.
>
>     *    *    *

2

> 6. Is Wife entitled to an award against
> Husband for her reasonable attorney's fees,
> both at the trial level and on this appeal?

### I. *Division of Property and Debts*

A trial court is vested with broad discretion in dividing marital property. **Kincaid v. Kincaid**, 912 S.W.2d 140, 142 (Tenn.App. 1995). The exercise of that discretion will not be disturbed on appeal unless "the distribution lacks proper evidentiary support or results from an error of law or a misapplication of statutory requirements and procedures." **Thompson v. Thompson**, 797 S.W.2d 599, 604 (Tenn.App. 1990). A trial court's task is to divide marital property in an equitable fashion, *see* T.C.A. § 36-4-121(a)(1), giving due regard to the factors set forth at T.C.A. § 36-4-121(c).

"Trial courts have the authority to apportion marital debts in the same way they divide the marital estate," *i.e.*, in an equitable manner. **Mahaffey v. Mahaffey**, 775 S.W.2d 618, 623 (Tenn.App. 1989). If equitable, debts should follow the assets to which they are related. **Mondelli v. Howard**, 780 S.W.2d 769, 773 (Tenn.App. 1989).

The evidence in this case pertaining to property and debts, practically all of which was stipulated or otherwise agreed to by the parties, reflects the following regarding the parties' marital property and marital debts:

```
Marital residence, less mortgage (net value) $26,300
Husband's TVA retirement                       43,823
1986 Ford Bronco                                3,200
1994 Toyota Camry LE, less debt (net value)    (1,623)
1984 GMC S-15 truck                             1,800
Furnishings with Wife                           3,915
Furnishings with Husband                        3,255
"Rusty" the dog - no value given            _____

                                              $80,670
Less: Other debts                              68,983

Net marital estate                            $11,687²
                                              =======
```

The trial court divided the marital property and marital debts as follows:

**Wife**

```
Marital residence subject to mortgage         $26,300
1994 Toyota Camry LE subject to debt           (1,623)
Furnishings with Wife                           3,915
Portion of other debts                        (22,081)

                                              $ 6,511
                                              =======
```

**Husband**

```
Husband's TVA retirement                      $43,823
1986 Ford Bronco                                3,200
1984 GMC S-15 truck                             1,800
Furnishings with Husband                        3,255
"Rusty" the dog
Portion of other debts                        (46,902)

                                              $ 5,176
                                              =======
```

As is obvious from the above, the parties were burdened with substantial debt. The trial court carefully assigned the parties' various obligations so as to match them with the assets to which they were associated. The parties' debts that were not related to specific assets were divided in a fashion that gave due regard to how and why the debts were created.

---

[2] While the trial court found a net marital estate of $16,428, the figure used in this opinion -- $11,687 -- tracks the essentially undisputed facts.

4

Wife asked the trial court to award her the house, and the court complied with her request. She asked for the full equity in the house in lieu of her interest in the TVA retirement. She suggested that the TVA pension be awarded to Husband. While Husband was awarded two vehicles, one of them -- the Bronco -- was not operable.

Wife complains that Husband received a disproportionate share of the marital assets; but this fact, while true, begs the question. The real issue is whether the trial court equitably divided the *net* assets of the parties, *i.e.*, marital assets less marital debts. It is abundantly clear that the division of the *net* assets is fair and equitable to Wife. This is particularly true in view of the fact that Husband was "saddled" with $46,902 of the parties' "other debts" of $68,983. This equitable distribution to Wife can also be seen in the fact that she received 55.7% of the *net* marital assets.

The evidence does not preponderate against the trial court's division of marital property and marital debts. *See* Rule 13(d), T.R.A.P. We find no abuse of the trial court's discretion.

## II. *Custody*

The trial court awarded the parties joint custody of their minor[3] child, Joshua David, who was 16 years old as of June 2, 1997, the date of the hearing below. As of that date, Joshua

---

[3]At the time of the hearing, the parties' other child -- Christopher Joseph -- was 21 years old and had attended Auburn University for three years.

had been passed to his junior year in high school. The trial court's judgment on the subject of custody is limited to the following:

> The parties are granted joint custody of their minor child, Josh Robertson and the parties shall share the responsibility of caring for their minor child and shall cooperate with each other in this regard for the best interest of the parties' minor child.

The judgment does not address the subject of the child's primary residence or visitation times with the other parent.

In this case, it is clear that the parties' minor child had lived with Wife from the date of the parties' separation up to the date of the hearing. There is no proof in the record indicating that this is going to change.[4] In view of this, and in order to memorialize the situation as it existed at the time of the hearing, we agree with Wife that the trial court's judgment should be modified, effective the date of its entry -- October 8, 1997 -- to reflect that the parties are awarded joint custody with primary residential custody being with Wife. In view of the chid's age, we do not believe it is necessary or appropriate, in this case, to set forth the specifics of the child's visitation with Husband. There is reason to believe, based on the record before us, that father and son can and will find a "comfort level" as to their time together. There is

---

[4]We recognize that the trial court's judgment states that "the parties shall share the responsibility of caring for their minor child," but there is no reason to believe that the child will, *in fact*, spend half of his time with Husband. The Guidelines focus on where a child is actually living, and not on the legal label -- such as joint custody -- decreed by a court. *See* Tenn.Comp.R. & Regs., ch. 1240-2-4-.02(6).

6

nothing in the record to indicate that Wife is inclined to interfere with this relationship, and she is admonished not to do so.

III.  *Child Support*

On the subject of child support, the judgment provides, in pertinent part, as follows:

> [Husband] shall pay to [Wife] the sum of $658.00 per month as child support through September, 1997 based on his annual gross income of $52,000.00 per year directly to [Wife].  Beginning October, 1997, [Husband's] child support obligation will be $387.00 per month.  The $387.00 per month child support to be paid by [Husband] is calculated by taking the difference between [Husband's] present base salary of $52,000.00 and [Wife]'s anticipated base salary of $22,000.00 and setting the amount based on the guidelines after taking the difference in these two (2) salaries.
>
> To the extent that [Husband's] gross income exceeds the amount of $52,000.00, child support will be increased by twenty-one percent (21%) of the increase in net income prior to September, 1997 and twenty-one percent (21%) of the increase difference in the net incomes of the parties after that date.

We find and hold that the trial court's approach in crafting the child support award is erroneous as a matter of law; and, furthermore, that it is based on a finding of fact that is contrary to the weight of the evidence.

A.

7

Child support is addressed extensively at T.C.A. § 36-5-101. In subsection (a)(1) of that statute, the court is directed to "set a *specific amount* [of child support]." (Emphasis added). In subsection (a)(2)(A) of the same code provision, the following can be found:

> Courts having jurisdiction of the subject matter and of the parties are hereby expressly authorized to provide for the future support of a spouse and of the children, in proper cases, by fixing *some definite amount or amounts...*

(Emphasis added). These provisions clearly reflect the intent of the legislature that child support be set in a definite dollar amount. *See* the unreported case of ***Lovan v. Lovan***, C/A No. 01A01-9607-CV-00317, 1997 WL 15223 (Court of Appeals at Nashville, January 17, 1997).

In the case at bar, the trial court set a specific amount of support -- $658 per month through September, 1997, and thereafter $387 per month -- but it then awarded additional child support based on a percentage, *i.e.*, 21%, of an amount to be determined in the future. It is clear from the applicable statute and case law that this approach does not conform to the legislative mandate.

In the ***Lovan*** case, the trial court ordered the obligor to pay $1,783 per month as child support for two minor children based on a monthly income of $8,000. It further directed that he pay the obligee, as additional child support, 32% of any income in excess of $96,000 per year. In vacating the child support

8

award based on future increases in income, this court said the following:

> We believe that the trial court exceeded its authority in ordering an automatic adjustment in child support based upon a percentage of the husband's future income as determined by his income tax return. While the child support guidelines create a rebuttable presumption as to the correct amount of child support, based upon the obligor's income, Tenn.Code Ann. § 36-5-101(a)(2)(A) only authorizes the courts to provide for the future support of a spouse or of the children "... by fixing some *definite amount* or amounts to be paid in monthly, semimonthly or weekly installments, or otherwise, as circumstances may warrant ...."
>
> Such a definite obligation provides the dependent children with a predictable amount of support, and enables the obligor to shoulder a known burden. If the obligor's income should increase or decrease substantially, then either party may apply to the court for a modification of the child support obligation. In view of the existence of a well-established mechanism for adjustment of child support, the court's action, although well-intentioned, amounts to an extension of its authority beyond the mandate of the legislature.

1997 WL 15223 at **4-5. (Emphasis in **Lovan**). To the same effect is the unreported case of **Smith v. Smith**, C/A No. 01A01-9705-CH-00216, 1997 WL 672646 (Court of Appeals at Nashville, October 29, 1997) wherein a panel of the Middle Section of this court disapproved of a child support award calculated, in part, based on "32% of any future bonus or commission" of the obligor. 1997 WL 672646 at **1.

The trial court in the instant case erred when it partially based the child support award on a percentage of a portion of Husband's future increases in income.

9

B.


We also find that the trial court erred when it established child support based upon the parties' relative earnings.  While this approach -- sometimes referred to as the "income shares approach" -- has been adopted in some states[5], it has not been adopted in Tennessee.  The Child Support Guidelines ("Guidelines") contemplate that support will be calculated based solely upon the income of the "parent with whom the child(ren) do not primarily live."  Tenn.Comp.R. & Regs., ch. 1240-2-4-.03(1).  It is clear that the income of the parent with whom the children live does not play a part in the calculation contemplated by the Guidelines:

> The child support award is based on a flat percentage of the obligor's net income as defined in paragraph (4) below depending on the number of children for whom support is being set in the instant case.  *While the income of the obligee should not be considered in the calculation of or as a reason for deviation from the guidelines in determining the support award amount*, the formula presumes that the obligee will be expending at least an equal percentage of net income as that of the obligor for the support of the children for whom support is sought.

Tenn.Comp.R. & Regs., ch. 1240-2-4-.03(2).  (Emphasis added).[6]
While the trial court is authorized to deviate from the Guidelines-calculated child support, *see* T.C.A. § 36-5-101(e)(1),

---

[5]Under the "income shares approach," the child support obligation of the obligor is based upon an analysis that focuses on the parties' relative earnings.  *See, e.g., Saleem v. Saleem*, 494 S.E.2d 883, 886 (Va.App. 1998); *Fink v. Fink*, 462 S.E.2d 844, 853 (N.C.App. 1995); and *Voishan v. Palma*, 609 A.2d 319, 321 (Md. 1992).

[6]The basic theory underlying the Guidelines is that a child is entitled to share in the obligor's standard of living as established by that parent's income, regardless of the child's minimum needs.  *Nash v. Mulle*, 846 S.W.2d 803, 805 (Tenn. 1993).

11

it must do so in a way that is consistent with the deviation principles found in the Guidelines. *See Jones v. Jones*, 930 S.W.2d 541, 545 (Tenn. 1996).

It is clear that a court is permitted to make a downward deviation from the Guidelines-calculated support if an obligor "demonstrates that he/she is consistently providing more care and supervision...than contemplated" by the Guidelines. Tenn.Comp.R. & Regs., ch. 1240-2-4-.04(1)(b); but this provision does not authorize a deviation in the instant case because there is absolutely no evidence to indicate that the necessary factual predicate is present here. On the contrary, the evidence tends to support a conclusion that Husband is with his son less than the amount of time contemplated by the Guidelines.

There is simply no evidence in this case supporting a downward deviation. *See Jones*, 930 S.W.2d at 544-546.

C.

The trial court determined that the child support analysis should be based upon a finding that Husband's gross annual income was $52,000, his annual salary for regular hours. We find and hold that this determination is contrary to the weight of the evidence.

Husband had worked at the Tennessee Valley Authority ("TVA") for 20-plus years. For the period 1993 - 1996, inclusive, his annual gross TVA income, *including overtime*, had been as follows:

12

|       |          |
|-------|----------|
| 1993  | $50,960  |
| 1994  | 54,341   |
| 1995  | 62,397   |
| 1996  | 76,333   |

His gross income to May 11, 1997, was $22,437.

In 1995, Husband earned overtime pay of approximately $12,000; in 1996, his overtime amounted to approximately $25,000. He testified that he had some 650 hours of overtime in 1996. He indicated that this figure was unusually high because of overtime work he performed in connection with a severe power outage. He did not expect that much overtime in the future; however, he acknowledged that he had worked 90 hours of overtime in the first five months of 1997.

Husband estimated that he would have $250 of monthly overtime in the future.

The trial court determined that it was appropriate to fix Husband's child support based solely on his regular salary of $52,000. It then fixed child support, utilizing an approach that we have found to be legally flawed in two separate respects.

Under the Guidelines, overtime is included in the definition of "gross income." Tenn.Comp.R. & Regs., ch. 1240-2-4-.03(3)(a). "Variable income such as...overtime pay...should be averaged and added to the obligor's fixed salary." Tenn.Comp.R. & Regs., ch. 1240-2-4-.03(3)(b).

13

We recognize that there may be cases where overtime in the past should not be factored "into the mix" in establishing an obligor's net income. For example, if the evidence clearly reflects that the obligor will not be earning overtime in the future, it would be unjust to base child support on a figure that includes such overtime. In those cases, it is appropriate to set child support based on the known, predictable income. If unexpected overtime is later experienced by the obligor and results in a "significant variance," *see* T.C.A. § 36-5-101(a)(1), as defined by the Guidelines, the court is then in a position, on petition to modify, to increase the previously-set amount of child support.

In the instant case, it appears that overtime is a fairly predictable part of the obligor's income stream. He may not experience overtime to the extent that he did in 1996, but there is every reason to believe that he will work a certain amount of overtime in the future. In fact, he acknowledged at trial that he was working some overtime in 1997. While this testimony is credible and supported in the record, we cannot accept his testimony that he was only earning approximately $250 per month in overtime pay. The evidence indicates otherwise.

We believe that there are at least two approaches to accurately calculate Husband's anticipated income, including overtime. In the first approach, we begin by observing that he had worked 90 hours of overtime in the first five months of 1997. At that rate, he could expect to work 216 hours for the full year. 216 hours is 33% of the overtime hours worked in 1996, *i.e.*, 650 hours. One-third of his 1996 overtime pay, *i.e.*,

14

$25,000, is $8,333. When this is added to his base pay of $52,000, we are left with an anticipated annual gross income from TVA of $60,346.

The second approach focuses on Husband's testimony that he earned $22,436 through May 11, 1997. His earnings of $22,436, *including overtime*, through the first 4.35 months of the year, extrapolate out to $61,892 per year.[7]

We believe it is appropriate to use the lesser of these two figures, *i.e.*, $60,346. This breaks down to a gross income of $5,028 per month. The Guidelines-calculated child support for a man earning at this rate of gross pay is $761 per month.[8] This is the correct amount of child support in this case, and there is no basis for a downward deviation. The trial court's judgment is modified to reflect that Husband's child support obligation is $761 beginning with the month of September, 1997.

IV. *Alimony*

The trial court awarded rehabilitative alimony of $250 per month for 12 *months*. This apparently was based, at least in part, on the trial court's determination that Husband's earning capacity was $52,000 gross per year. We find and hold that the evidence preponderates against the trial court's finding that rehabilitative alimony of $250 per month for 12 months is a proper and adequate award in this case.

---

[7]$22,436 is to 4.35 months as $61,892 is to 12 months.

[8]The chart accompanying the Guidelines reflects child support of $757 for one child for a man earning a gross monthly income of $5,000. $761 is to $5,028 as $757 is to $5,000.

The issue of alimony is one that addresses itself to the sound discretion of the trial court. *Loyd v. Loyd*, 860 S.W.2d 409, 412 (Tenn.App. 1993). "The decision is factually driven and requires a balancing of the [statutory] factors." *Id*. at 412. *See* T.C.A. § 36-5-101(d)(1). Of all the factors in the statute, need, ability to pay, and relative fault have been identified as the most important. *Bull v. Bull*, 729 S.W.2d 673, 675 (Tenn.App. 1987). We will not second-guess the trial court unless there is a showing of an abuse of discretion. *Aaron v. Aaron*, 909 S.W.2d 408, 411 (Tenn. 1995).

The relevant statute, T.C.A. § 36-5-101, clearly reflects a bias in favor of rehabilitative alimony. *Id*. at subsection (d)(1); but it is also clear that rehabilitative alimony, as contrasted to periodic alimony *in futuro,* is only favored in those cases where rehabilitation is feasible. *Id*.

The alimony analysis begins with the threshold determination of whether or not the spouse requesting alimony is "economically disadvantaged, relative to the other spouse." *Id*. If the requesting spouse does not fit within this description -- "economically disadvantaged, relative to the other spouse" -- he or she is not entitled to spousal support and the alimony inquiry goes no further.

In the instant case, it is clear that Wife is "economically disadvantaged" *vis-a-vis* Husband. He has demonstrated the ability to earn at least in the $60,000-plus range. In 1996, he earned $76,333. His job seems relatively

16

secure.  On the other hand, Wife, who delayed her career in order to serve as homemaker, wife, and parent, is just now getting started, at the age of 42, in her chosen field of education.  She started that career in August, 1997, at an annual gross salary of $22,500.  Prior to that, she had only worked as a non-degreed, substitute teacher for four or five years, earning some $3,000-$4,000 per year.  She received her degree in education in December, 1996, after completing some three and a half years of undergraduate college with a perfect 4.0 grade point average.  It is clear that Wife wants to work and plans to work.

Since Wife is "economically disadvantaged, relative to [her] spouse," *id*., we next turn to the question of whether rehabilitation is "feasible in consideration of all relevant factors, including those set out in [T.C.A. § 36-5-101(d)(1)]." *Id*.  In order to answer this question, we must first answer another "shorthand" question: Rehabilitated to what?  We believe it is clear that this question, in this case, must be answered in the context of "[t]he standard of living of the parties established during the marriage."  T.C.A. § 36-5-101(d)(1)(I).  In this 20-year-plus marriage, the parties enjoyed a standard of living that was funded by an above-average income -- in the range of $62,000-$76,000 in the last two years of the marriage -- plus the borrowing power associated with income at that level.

We recognize that not every economically-disadvantaged spouse is entitled to alimony.  This is true regardless of whether such a spouse can or cannot be rehabilitated.  In the final analysis, the question of whether such a spouse is entitled to alimony, and, if so, in what amount and for what duration,

17

depends upon a careful weighing of the factors set forth in T.C.A. § 36-5-101(d)(1)(A)-(L). For example, there may be a case where the relative fault of the requesting spouse is so egregious as to militate against any spousal support; or such as to warrant an award of spousal support in an amount less than that requested or needed. In any given case, all relevant factors must be considered in determining whether an award of alimony is appropriate.

When Wife's present economic situation is measured against the parties' standard of living established during their relatively long marriage, it is clear that Wife, by her own efforts, cannot even remotely approach her prior economic position. This being the case, we find that Wife cannot be rehabilitated as contemplated by T.C.A. § 36-5-101(d)(1). Hence, we now turn our attention to the subject of alimony *in futuro*.

In view of her relatively small salary and her pre-separation lifestyle, Wife has a demonstrated need for alimony. While Husband has been burdened with substantial debt, we believe that he has the ability to pay some periodic alimony *in futuro*, albeit not enough to completely return Wife to her prior standard of living. The amount decreed in this opinion will, however, allow Wife "to more closely approach her former economic position," **Aaron**, 909 S.W.2d at 411.

The trial court's judgment is modified to provide that Husband will pay periodic alimony *in futuro* at the rate of $250 per month beginning with the month of October, 1997, said alimony to continue at that rate so long as Husband is obligated to pay

child support; and to further provide that in the month following the last month for which he has a child support obligation, his periodic alimony *in futuro* obligation will increase to $600 per month. This obligation will continue until the remarriage of Wife or the death of either party, whichever of these three events occurs first.

In setting Wife's entitlement to periodic alimony *in futuro* without a definite termination date, we have considered "[t]he relative earning capacity, obligations, needs, and financial resources" of the parties, *see* T.C.A. § 36-5-101(d)(1) at factor (A); "[t]he relative education and training" of the parties and the income that each can expect in the future, *id.* at factor (B)[9]; "[t]he duration of the marriage" -- 22 years plus, *id.* at factor (C); the parties' ages -- each 42 years old, *id.* at factor (D); the parties' standard of living during their marriage, *id.* at factor (I); their relative contributions to the marriage, *id.* at factor (J); and the egregious fault[10] of Husband which has deprived wife of her standard of living, *id.* at factor (K). These matters, taken together, militate in favor of periodic alimony *in futuro* without a definite ending date.

## V. *Attorney's Fees*

Wife seeks attorney's fees, both for services rendered at the trial court level and on this appeal.

---

[9]While Wife has more education than Husband, his work experience is almost certain to produce more income than Wife's education degree.

[10]The trial court's finding that Husband had engaged in a year-and-a-half-long, adulterous relationship with a co-worker is supported by the evidence.

19

An award of attorney's fees at trial can be based on a number of rationales.

The courts of this state long ago recognized their authority to award legal expenses in child support cases. *Graham v. Graham*, 140 Tenn. 328, 334-35, 204 S.W. 987, 989 (1918). The recovery of attorney's fees in custody matters is also authorized by statute. T.C.A. § 36-5-103(c). The statute specifically provides that such an award is "in the discretion of [the] court." *Id*.

Legal expenses can also be awarded in the nature of alimony. *Dover v. Dover*, 821 S.W.2d 593, 595 (Tenn.App. 1991). In awarding fees under this approach, the court should consider the factors set forth at T.C.A. § 36-5-101(d)(1)(A)-(L). *Kincaid*, 912 S.W.2d at 144. The primary focus is on whether the requesting spouse has the ability to pay his or her own fees; and, if not, whether the other spouse has the resources to do so. *Houghland v. Houghland*, 844 S.W.2d 619, 623 (Tenn.App. 1992). Decisions pertaining to the awarding of fees as alimony address themselves to the sound discretion of the trial court, and will not be disturbed on appeal unless there has been an abuse of that discretion. *Lyon v. Lyon*, 765 S.W.2d 759, 762-63 (Tenn.App. 1988).

An appellate court is authorized to award attorney's fees in a divorce case for legal services rendered on appeal. *See Seaton v. Seaton*, 516 S.W.2d 91, 93 (Tenn. 1974). *See also Ragan v. Ragan*, 858 S.W.2d 332, 333-34 (Tenn.App. 1993).

20

We find and hold that the trial court abused its discretion in failing to award Wife attorney's fees. Because of the difference in the parties' incomes, and in view of the fact that Husband's misconduct was the cause of this divorce and resulting litigation, we believe that it is appropriate that Husband pay at least some portion of Wife's legal expenses. We also believe that Wife is entitled to fees on this appeal as the prevailing party, said fees to be set by the trial court. On remand, the trial court will set fees to be paid by Husband in such amount as it may find just. *Seaton*, 516 S.W.2d at 93-94; *Folk v. Folk*, 357 S.W.2d 828, 828-29 (Tenn. 1962).

## VI.  *Conclusion*

The trial court's decrees regarding custody, child support, and alimony are modified. The trial court's judgment with respect to Wife's request for attorney's fees is reversed. In all other respects, the judgment is affirmed. Costs on appeal are taxed to the appellee. On remand, the trial court will modify its judgment to incorporate the changes reflected in this opinion, and will determine the legal fees to which Wife is entitled.

_____
Charles D. Susano, Jr., J.

CONCUR:


_____
Houston M. Goddard, P.J.


_____
Don T. McMurray, J.

21