**Alice Claire Stevenson WALKER,**
**Plaintiff-Appellant-Cross-Appellee,**

v.

**Bruce Howlett WALKER,**
**Defendant-Appellee-Cross-Appellant.**

Court of Appeals of Tennessee,
Western Section, at Jackson.

March 4, 1983.

David E. Caywood, Memphis, for plaintiff-appellant-cross-appellee.

James T. Reed, Memphis, for defendant-appellee-cross-appellant.

CRAWFORD, Judge.

This case involves two appeals. The plaintiff-wife, Alice Claire Stevenson Walker, has appealed from the final decree of divorce granted her as it concerns alimony, attorneys' fees and an evidentiary question. Defendant-husband, Bruce Howlett Walker, has appealed from a subsequent order of the court allowing wife to remove the children to Canada and denying his petition to change custody. Neither party raises any

question as to the actual granting of the divorce to the wife on the grounds of cruel and inhuman treatment. We will treat the matters separately in the order of their occurrence.

## I.

### APPEAL OF DIVORCE DECREE

Plaintiff-wife has appealed the final decree of divorce raising the following three issues:

1. Whether the court erred in not allowing into evidence a certain trial exhibit;

2. Whether the court erred in terminating the wife's alimony at the end of a five-year period; and

3. Whether the court erred in not requiring defendant-husband to pay all of the wife's attorneys' fees.

The parties were married in Ontario, Canada on August 14, 1965, and they were divorced by final decree entered March 18, 1982 in Memphis, Tennessee. At the time of the separation of the parties on September 30, 1980, they had been married 15 years and had three sons, ages 13, 12 and 9. The husband was 42 years of age, and the wife was 38 years of age. The wife holds a bachelor's degree from the University of Toronto and in the past has received training in computers. The husband has a bachelor's degree from Amherst College as well as a master's degree in business administration from Harvard University. During the early years of the marriage the wife was employed, but following the birth of the first child, she concentrated on maintaining the home and family and was not employed further outside the home.

The parties owned as tenants by the entirety the home located in Germantown, Tennessee, which was valued at $250,000 but encumbered by indebtedness amounting to $150,000, resulting in an equity of $100,000. The husband owns a 150-acre farm in Vermont with an approximate net value of $150,000, and after the separation of the parties he purchased a condominium that had an approximate net value of $5,000.

Husband is vice-president of a large, well-known corporation, and in 1981 he earned $108,281 from salary and other income. In addition, husband receives certain other benefits from the corporation such as bonuses, an automobile, and a health insurance plan. The total debts of the parties amounted to approximately $201,566 which included the $150,000 home mortgage. There is some indication that during the pendency of the divorce action, husband was offered but turned down a pay increase of over $6,000 per year, with the implication that this was done because of the wife's demand for alimony. Wife's expenses for herself and the children were estimated at $3,783 per month, and husband's expenses, over and above any amounts paid to wife and children, amounted to $2,000 per month.

The parties seem to have had a fairly happy marriage until husband became involved with another woman. It appears that husband wanted to completely change his life-style insofar as his recreational activities were concerned. The husband was not receptive to attempts at reconciliation.

In the final decree granting the wife a divorce on grounds of cruel and inhuman treatment, the court awarded custody of the three minor children to the wife with visitation rights to the husband. The family home was ordered sold with the net equity to be paid to wife. Husband was to receive the farm in Vermont and the condominium in Memphis. The personal property of the parties was to be divided equally. In addition, husband was ordered to pay the house note until the home was sold and to pay alimony of $250 per month during that same period of time. After the home was sold, husband was ordered to pay alimony of $1,400 per month for a period of five years. Husband was also ordered to pay $400 per month in child support for each of the three children. He was ordered to maintain $50,000 of life insurance payable to wife until the alimony obligation was fulfilled. The children were to remain beneficiaries on husband's current insurance policies, and husband was to pay all medical and dental bills for the children. Finally,

husband was ordered to pay attorneys' fees to wife's attorney in the amount of $4,000 and to purchase wife a new automobile.

■ Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

■ The first argument by wife is that the trial court was in error in not allowing the introduction into evidence of Exhibit 12 on behalf of wife. This exhibit is a letter from husband to wife's father with an attachment in which he lists various and sundry complaints by husband against wife and espouses his supposed philosophy of life. The issue as set out is somewhat misleading, because the record reveals that the exhibit's admissibility was raised when wife's counsel attempted to question husband during cross-examination concerning his "philosophy." Objection was made by husband's counsel that since there was no issue as to grounds for divorce this line of questioning was irrelevant, and the court sustained the objection. Counsel for wife apparently had intended using the letter in cross-examination and thereupon asked that it be admitted for identification, which was done.

We feel that the matters contained in the letter are relevant, or could be relevant, even though the actual grounds for divorce are not contested, since the conduct of the parties can be considered in connection with the alimony and property rights. *See Massey v. Massey,* 621 S.W.2d 728, 730 (Tenn. 1981). Apparently wife does not seriously contend that this affected the judgment of the court, and, in fact, she did not even comment in her brief about this issue other than to set it out as an issue. We cannot see that the exclusion of this evidence more probably than not affected the judgment and, therefore, feel that at most it was harmless error. T.R.A.P. 36(b).

■ The wife's second argument is that the court was in error in terminating wife's alimony payments at the end of five years.

No hard and fast rule respecting the amount of alimony to be granted can be laid down, and the facts of each particular case must govern. *See Stone v. Stone,* 56 Tenn.App. 607, 615–616, 409 S.W.2d 388, 392–393 (1966).

■ In *Massey v. Massey,* 621 S.W.2d 728 (Tenn.1981), the court listed various factors to be considered in determining the amount of alimony and said, quoting from C.J.S., that some of the factors are:

> ... the financial circumstances of the parties, with special reference in some instances to their estates, incomes, debts, obligations, or necessities; the source of their property, that is, how and when it was acquired, and whether their property was acquired or accumulated before or after marriage; the estate of each of the parties at the time of the marriage; what the parties surrendered or gave up by marriage; whether the property is the husband's separate property or the joint accumulation of the parties; and the contributions of each to the joint or accumulated property.
>
> Other factors that may be taken into consideration in passing on alimony include the ability of the parties to earn, and their probable future prospects; their sex, age, health, and ability to labor; the respective ages of both of the parties to the divorce proceeding when they married; their station in life or standard or mode of living; their children; if any, and the care and disposition of them; the duration of the marriage and whether it was one of affection or convenience; and the conduct of the parties, with particular reference to the cause of divorce and the relative or comparative responsibility of each therefor.

*Id.,* at 729 (Emphasis omitted).

Husband was the single, precipitating factor in the dissolution of the marriage, and he concedes that wife had been a good wife, housekeeper, and mother, and that she was without fault in this regard. Husband

is a high-level executive with a large corporation, and apparently he is performing excellently and has a future that is quite bright. Wife has a college education and some training in computers, although she has had none recently. Some additional training is necessary for wife to be competitive in the computer field. Although wife has some physical ailments, she appears to be in good health. She is 38 years of age and is capable of entering the employment market. She has custody of the children, ages 13, 12 and 9; thus, the youngest child would be approximately 14 years of age when the alimony awarded by the court terminates in five years.

Neither party questioned the court's actions in its awards except as they related to alimony and attorneys' fees. It seems that the court has divided the parties' net worth in approximately equal portions, although it is contended that husband obtained the larger share. We feel that the court was correct in providing for some termination of the alimony, but in view of all of the facts and circumstances, we feel that there should be a somewhat different disposition. We must bear in mind that this wife—apparently at husband's insistence—has devoted her married life to the maintenance of the home and the furtherance of the husband's career and that she was brought to her pre-divorce lifestyle more for the benefit of husband than for herself. Without fault on her part, this has suddenly changed and she finds a totally different lifestyle in the offing. While nothing will take the place of the marital home as it existed prior to the difficulties that arose, she should not be left in a worse financial situation than she was before the marriage was brought to an end. *See Williams v. Williams,* 146 Tenn. 38, 236 S.W. 938 (1921).

As stated, we agree with the concept of the court on the termination of alimony, and bearing that in mind, we modify the court's decree as follows: Husband shall pay as alimony *in solido* the sum of $1,400 per month for the five-year period designated by the trial court. At the termination of this five-year period, if wife has not remarried, she is awarded the sum of $1,400 per

month as alimony *in futuro* for a period of three additional years from and after the expiration of said five-year period or until she shall die or remarry within said three-year period.

The third issue raised by wife is that the court was in error in not requiring husband to pay all of wife's attorneys' fees instead of a part thereof.

In *Ligon v. Ligon,* 597 S.W.2d 310 (Tenn. App.1979), the court said:

Ordinarily, if the wife is financially able to procure counsel, there is no occasion for fixing the amount of her counsel's fee which should be a matter of contract between attorney and client.

*Id.,* at 310.

In this case, with the award of the entire proceeds from the sale of the house to wife, she is able to pay the balance of the attorneys' fees as required by the court. We do not feel that the order concerning attorneys' fees should be disturbed.

For the reasons set out above, the final decree of divorce of the trial court is affirmed as modified.

## II.

## ORDER ALLOWING REMOVAL OF CHILDREN TO TORONTO, CANADA AND DENIAL OF HUSBAND'S PETITION FOR CHANGE OF CUSTODY

The order allowing wife to remove the children to Toronto, Canada and denying husband's petition for change of custody was entered July 6, 1982, four months after the final decree of divorce was entered. Husband appeals and sets out two issues:

1. Whether the trial court erred in allowing wife to remove the children to Toronto, Canada, and in denying husband's petition for change of custody; and

2. Whether the court erred in refusing to allow a psychological evaluation of the children.

We will deal with the second issue first. Husband filed a motion seeking to have his three children examined and evaluated for the purpose of the hearing on their removal to Toronto and change of custody. Attached to this motion were the affidavits of both a psychiatrist and a psychologist. Apparently, the psychiatrist and psychologist felt that from their proposed examination they could tell what impact the move would have on the children. This would be based, of course, on the statements they would elicit from the children during the examination. Husband contends that Tenn. R.Civ.P. 35.01 (1982) authorizes such an examination, but we are doubtful whether this rule would authorize an examination of these children when their mental or physical condition is not in issue. The examiners were allowed to testify at the hearing as to their opinion based on hypothetical facts, and it appears that what the children would tell them at this point in time as it pertained to their future mental condition would be mere speculation. Husband did not reveal to the court how the examiners could testify any more accurately as to what might happen in the future based on what was told them in the course of an actual examination. We feel that the court properly exercised its discretion in refusing to allow the examination.

The last issue involved in this appeal concerns the action of the court in allowing wife to remove the children to Toronto, Canada and in denying the husband's petition for change of custody. This issue really boils down to whether the action of the court was in the manifest best interest of the children.

In cases involving child custody, the court reviews the record de novo, but without the usual presumption of correctness. *Smith v. Smith,* 188 Tenn. 430, 439, 220 S.W.2d 627, 630 (1949); *Bevins v. Bevins,* 53 Tenn.App. 403, 409–410, 383 S.W.2d 780, 783 (1964). The single guiding star in determining child custody cases is the welfare and best interests of the children.

It is a well-settled principle of law in this state that where a decree has been entered awarding custody of children that decree is *res judicata* and is conclusive in a subsequent application to change custody unless some new fact has occurred which has altered the circumstances in a material way that the welfare of the children requires a change in custody. *Long v. Long,* 488 S.W.2d 729, 731–732 (Tenn.App.1972). In the case sub judice husband does not contend that wife is unfit to have the custody of the minor children, but on the contrary concedes that if she remained in Memphis, custody should stay as originally decreed by the court. The sole contention of husband for change of custody is that the children should not be removed with the mother to Toronto, Canada.

Wife contends that husband was well aware of wife's intention to eventually remove the children to Toronto, and this contention has considerable support in the record. For example, during direct examination of husband in the divorce hearing, the following exchange took place:

Q. [Husband's counsel]: All right. During separation has Mrs. Walker ever mentioned to you any intention or plans or any speculation about moving to Canada?

A. Yes.

Q. Okay. When was the most recent time she has expressed any preference in that regard?

A. On February 25th we talked for about four hours, and she expressed the intention to move to Toronto.

Q. What did she say that gave you that impression?

A. Well, she had been checking out housing, and more specifically the fine points of one school versus another.

Q. Did she mention any names of Canadian schools to you?

A. Yes. In description of—

THE COURT: (Interposing.)

Is this in dispute, gentlemen?

[Wife's counsel]: I thought she was very candid in what she said. She said

she had considered it. She didn't know what she was going to do and—

[HUSBAND'S COUNSEL]
(Interposing.)

[Wife's counsel] indicates that it's uncertain. I have thought it was a fairly definite plan on her part.

THE COURT: Well, as I told you, gentlemen, that can be resolved by the Court if Mr. Walker is concerned about visitation.

There being no dispute about the custody, the Court will place the custody of the children in Mrs. Walker, with the understanding that she will be enjoined from removing those children from the jurisdiction of this Court until such time as she petitions this Court and—notifies Mr. Walker and his attorney, and petitions the Court to remove the children, at which time we can work out a visitation schedule regarding the children if she desires—ultimately desires to move.

Then the Court will just, as part of the final decree in this case, enjoin her from removing the children from the jurisdiction of the Court without first petitioning the Court to—where we can work out some agreeable arrangement so Mr. Walker can spend time with his children.

[Wife's counsel]: Yes, sir, I understood that from back in chambers.

[Husband's counsel]: Yes, sir. Thank you, Your Honor. I had also understood that.

There is another aspect which we think Your Honor now has evidence on that, was the heavy note on the house is not realistic if she's planning to move to Canada, but I think Your Honor has the evidence on that.

It is significant to note that the final decree provided for the home to be sold and that this was done with the acquiecence of both parties and apparently based on the court's understanding of wife's intention. We feel that husband had full knowledge of the facts which he now contends constitute a change of circumstances justifying a change in custody. Accordingly, we feel that the court's order awarding permanent custody to the wife is *res judicata* as to the husband's petition for change of custody based on this alleged change in circumstances and that the trial court was correct in denying relief to the husband.

▄▄ In addition to seeking change of custody on the ground that there has been a change in circumstances (i.e., wife's desire to remove children to Canada), husband contests wife's petition to be allowed to remove the children to Canada.

In the recent case of *Frey v. Mead,* (unpublished opinion of the Court of Appeals, Middle Section, filed August 20, 1982), the Middle Section of this court considered, among other things, a petition by a custodial mother to remove the minor child to another state. The mother had been awarded custody in the divorce proceeding and had been enjoined from removing the child from Davidson County without express authority of the court. After citing general authority from treatises, Judge Cantrell, writing for the majority in a divided court, concluded: (1) that allowing a child to be removed from the jurisdiction of the court by the custodial parent is within the sound discretion of the trial judge; and (2) in order to reverse the trial judge's denial of such permission, the court must find that it is in the best interest of the child to allow removal. Judge Conner dissented in part and contended that "(2) the trial judge must find that it is *not* in the best interest of the child to allow removal in order to refuse such permission." (Conner, J.), (emphasis added).

We agree with Judge Cantrell that in the typical situation where the court in awarding custody enjoins the custodial parent from removing the children without the court's permission, the burden of showing that the move is in the best interest of the children should be on the custodial parent seeking the relocation. On the other hand, we agree with Judge Conner that in the situation where no injunction has been issued in the award of custody, the parent

contesting the relocation should bear the burden of showing that the relocation is not in the best interest of the children. While the court in the present case enjoined wife from removing the children from the jurisdiction without permission of the court, it is apparent from the above quotation from the record that this was done in order to establish proper visitation rights for husband.

 We feel that in matters involving the removal of children from the jurisdiction in which custody was awarded we are still bound by the paramount rule that whatever is done must be in the best interest of the child. However, we recognize that while simply stated, this rule must be amplified and be what is reasonable under the circumstances in the best interest of the child. With this criteria to guide us, we examine the situation of these minor children.

The established home of the children as it existed throughout the major part of their lives exists no more. In fact, the home place itself has been ordered disposed of by the court. They have no family ties in Memphis, Tennessee, other than their now-divorced mother and father, but in Toronto, Canada, they have maternal grandparents, aunts, uncles and cousins, together with their mother who is recognized by all as a most fit and proper person for the custody of the children. The cultural and educational advantages of the new surroundings appear to be at least equal to those available in Memphis. Wife's world had been almost completely dominated by the activities of her children and the entertaining of husband's business associates and their families. Since the dissolution of the marriage, she still has the children, but her relationship with the families of husband's business associates is most awkward. It is understandable and reasonable under the circumstances that wife would desire to leave this environment and return to her family and ancestral home. The custodial parent must make arrangements for the continued care and well-being of the minor children, and the mental and physical condition of the custodial parent would of necessity have some affect on the well-being of the children. As stated, the children will have the benefit of family that they do not have in Memphis, Tennessee, and the court cannot find that their removal to Toronto, Canada, will be detrimental to their best interest. Of course, no one can predict the future, and it could well be that upon moving to Canada, one or more of the children could become unhappy with the new surroundings, but at this point it is difficult for this court to see how such a prediction can be made with any accuracy one way or the other. We do not feel that the trial court abused its discretion in allowing the removal of the children. We feel that the trial court acted properly. We therefore affirm the trial court in all respects, except as modified on the question of alimony *in futuro* to wife.

The costs of this appeal are adjudged against husband, and the case is remanded for such further proceedings as necessary.

NEARN, P.J. (W.S.), and TOMLIN, J., concur.