Anthony B. BULL, Plaintiff/Appellant,

v.

Mary W. BULL, Defendant/Appellee.

Court of Appeals of Tennessee, Middle Section, at Nashville.

March 4, 1987.

Application for Permission to Appeal Denied by Supreme Court May 18, 1987.

F. Dulin Kelly, Hendersonville, for plaintiff/appellant.

Tom H. Proctor, Jr., Nashville, for defendant/appellee.

## OPINION

KOCH, Judge.

This appeal stems from the dissolution of a twenty-four year marriage. The wife obtained a divorce in the Probate Court of Davidson County on the grounds of cruel and inhuman treatment. The trial court divided the marital estate and awarded the wife both alimony *in solido* and $650 per month alimony *in futuro* for ten years or until she remarries. The husband has perfected this appeal and takes issue only with the amount of the alimony *in futuro* awarded. We affirm the trial court's decision.

I.

Anthony and Mary Bull were married in November, 1959 in Alexandria, Virginia. They were in their early twenties. Mr. Bull was serving in the United States Marine Corps at the time, although he left the service approximately one month after the marriage. They moved to Tennessee in August, 1962 to enable Mr. Bull to attend college at Carson Newman College. The parties have two children who are now beyond the age of majority.

Mr. Bull has a college degree and has engaged in postgraduate studies. He is employed as the administrator of the Rutherford County Hospital and earns approximately forty thousand dollars per year. Mrs. Bull has a high school education. She worked all but six and one half years of the parties' twenty-five year marriage. At the time of the trial, she had been employed for ten years as a secretary by the Baptist Sunday School Board. She earned approximately fourteen thousand dollars per year.

The relationship between Mr. Bull and Mrs. Bull deteriorated gradually during their marriage. Their marital disharmony culminated in 1979 when Mr. Bull had an extramarital affair. He left the parties' home in Hermitage in 1980 and moved in with his paramour for approximately six months. He returned home only to move out again several weeks later when the parties' attempt at reconciliation failed. The pattern of moving out and returning home continued for over a year until Mr. Bull moved out of the Hermitage home permanently in 1982.

Mr. Bull constructed a home in Murfreesboro in 1983. The parties discussed another reconciliation during this time but these discussions proved fruitless. Finally, Mr. Bull filed a complaint for divorce in June, 1984. Mrs. Bull counterclaimed for divorce one month later.

The trial court awarded Mrs. Bull a divorce on the grounds of cruel and inhuman treatment. It divided the marital property by giving Mrs. Bull the property connected with the Hermitage residence and by giving Mr. Bull the property connected with the Murfreesboro residence. The trial

court awarded each party the vehicles they had in their possession and directed Mr. Bull to become solely responsible for $12,800 in accumulated debts.[1] It also awarded Mrs. Bull her husband's share of the equity in the Hermitage home as alimony *in solido* and directed that Mrs. Bull would be solely responsible for the remaining indebtedness on the property. Likewise, Mr. Bull was given the Murfreesboro property and was required to assume the outstanding mortgage debt. Mrs. Bull was also awarded $1,500 to help defray her legal expenses. Finally, the trial court directed Mr. Bull to pay Mrs. Bull $650 per month as alimony *in futuro* for ten years or until she remarries.

## II.

■ Mr. Bull raises only one issue in this appeal. He insists that Mrs. Bull is not entitled to alimony *in futuro* because of the manner in which the trial court divided the marital estate and because the trial court awarded Mrs. Bull his share of the equity in the Hermitage home as alimony *in solido*. He also insists that Mrs. Bull has not demonstrated that she needs alimony *in futuro*.[2] We disagree.

The disposition of each divorce case is dictated by its unique facts. *Walker v. Walker*, 656 S.W.2d 11, 14 (Tenn.Ct.App. 1983). Thus, trial courts are vested with wide latitude in these matters. *Ingram v. Ingram*, 721 S.W.2d 262, 264 (Tenn.Ct.App. 1986); *Lancaster v. Lancaster*, 671 S.W.2d 501, 502 (Tenn.Ct.App.1984); and *Shackleford v. Shackleford*, 611 S.W.2d 598, 600 (Tenn.Ct.App.1980). In accordance with Tenn.R.App.P. 13(d), it is our task to review the record *de novo* with the presumption that the trial court's findings of fact are correct unless the evidence preponderates otherwise.

■ Tenn.Code Ann. § 36–5–101(d) enumerates the factors to be considered in determining whether rehabilitative alimony should be awarded and, if so, the amount.

The most common factors considered by the courts are: (1) the need of the innocent spouse; (2) the fault of the obligor spouse; and (3) the obligor spouse's ability to provide support and maintenance. *Fisher v. Fisher*, 648 S.W.2d 244, 246–47 (Tenn. 1983); *Lancaster v. Lancaster*, 671 S.W.2d 501, 503 (Tenn.Ct.App.1984); and *Barker v. Barker*, 671 S.W.2d 843, 847 (Tenn.Ct.App. 1984).

We have reviewed the evidence independently in light of the factors contained in Tenn.Code Ann. § 36–5–101(d). Neither the manner in which the trial court divided the marital property nor its award of alimony *in solido* requires an adjustment in the amount of the trial court's award of rehabilitative support and maintenance.

■ Mrs. Bull is presently fifty-one years of age. She has a high school education and is employed as a clerical worker. She earns approximately $1,200 per month and her take home pay is far less. Her income stands in stark contrast to her estimated monthly living expenses which exceed $2,200. The prospects of increasing her income are remote by her own admission.

Mr. Bull asserts that Mrs. Bull does not need periodic alimony because she has overstated her estimated monthly expenses. He takes specific issue with Mrs. Bull's estimated expenditures for food and clothing as well as the amount of her charitable giving. However, the combined amount of Mrs. Bull's monthly income and Mr. Bull's periodic alimony only approximates Mrs. Bull's monthly expenses. Thus, we concur that Mrs. Bull needs these periodic alimony payments to meet her regular monthly expenses.

■ Tenn.Code Ann. § 36–5–101(d)(7) specifically permits the trial court to consider the manner in which the marital estate has been divided when determining whether periodic alimony should be awarded. We do not find that awarding Mrs. Bull her husband's share of the equity in

---

1. This included $4,300 in department store bills, $6,900 in obligations to the bank and a $1,600 loan Mr. Bull made on his wife's insurance policy.

2. Mr. Bull also asserts in the brief filed in the Court that he desires to break all ties with Mrs. Bull. He claims he does not wish to be reminded of her on a monthly basis by being required to pay her periodic alimony. We find these sentiments to be unimpressive and irrelevant.

the Hermitage home as alimony *in solido* is such a disproportionate distribution of the marital estate to require an adjustment of the amount of period alimony awarded by the trial court.

 We have recognized in other cases that it is appropriate, where possible, for the trial court to grant relief intended to maintain the innocent spouse's pre-divorce status quo. *Walker v. Walker*, 656 S.W.2d 11, 15 (Tenn.Ct.App.1983) and *Shackleford v. Shackleford*, 611 S.W.2d 598, 601 (Tenn. Ct.App.1980). Mrs. Bull has resided in the Hermitage house for the greater part of her marriage. Her marriage has ended because of her husband's infidelity. It was, therefore, within the trial court's prerogative to award her Mr. Bull's interest in this property and to require her to assume the remaining indebtedness thereon.

### III.

The judgment of the trial court is affirmed. The case is remanded for further proceedings. The costs of this appeal are taxed against Mr. Bull and his surety for which execution, if necessary, may issue.

TODD, P.J. (M.S.), and CANTRELL, J., concur.