IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 13, 2001 Session

## JAN K. BURNS v. JAMES F. BURNS

**Appeal from the Circuit Court for Hamilton County**
**No. 97DR0814    Jacqueline E. Schulten, Judge**

**FILED JANUARY 30, 2002**

**No. E2001-01039-COA-R3-CV**

In this divorce case, the husband appeals the trial court's awards of alimony *pendente lite* and alimony *in futuro* to the wife. The record before us does not demonstrate that the evidence preponderates against the trial court's judgment. Accordingly, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and D. MICHAEL SWINEY, J., joined.

Richard A. Schulman, Chattanooga, Tennessee, for the appellant, James F. Burns.

Sandra J. Bott, Chattanooga, Tennessee, for the appellee, Jan K. Burns.

**OPINION**

I.

Jan K. Burns ("Wife") and James F. Burns ("Husband") were married in 1977. There were no children born to their union. For most of the parties' marriage, they operated a commercial sign business, an enterprise with a history of financial problems stemming primarily from the parties' failure to pay payroll and income taxes for several years. Although the exact amount owed by the parties in taxes and penalties is not clear from the record, it appears that the amount owed is greater than their net worth.

Wife initiated divorce proceedings in March, 1997. In June, 1997, the trial court awarded her alimony *pendente lite* of $1,500 per month. This divorce litigation was set for trial on August 12, 1998. Husband did not appear at the hearing, however, due to an alleged medical emergency. Although there is no transcript or statement of the evidence of the August 12, 1998, proceedings, it appears from the record before us that Husband's attorney requested a continuance of the trial as well as the appointment of a special master. Wife's attorney, in turn, made an oral motion for a

modification of alimony. The trial court granted the motion for a continuance and appointed a special master, but also allowed Wife to present evidence regarding her need for increased temporary support. Upon hearing Wife's evidence, the trial court increased the temporary support award to $2,000 per month.

In March, 1999, Wife filed a petition for contempt, alleging that Husband had failed to pay any *pendente lite* support since August, 1998. Thereafter, Husband retained new counsel, and, in May, 1999, filed a petition to modify the award of temporary support, alleging that Wife was "gainfully employed and should not be allowed to obtain alimony at this time."

This divorce matter proceeded before the special master, who filed his report with the trial court on September 22, 2000. Both parties filed objections to the report. In November, 2000, the trial court conducted a hearing upon the parties' objections; Wife's petition for contempt for failure to pay *pendente lite* support; Husband's petition to modify the *pendente lite* support; and the issue of permanent alimony.

Following the hearing, the trial court entered a judgment of divorce, awarding the divorce to Wife on the grounds of inappropriate marital conduct and adopting the special master's report with some exceptions. The trial court ordered the remaining assets of the parties' business, which the court noted was "basically insolvent," to be sold and the proceeds applied to the debts of their business. The court divided the marital property and ordered the marital residence to be sold and directed that the proceeds from the sale be applied to the parties' large tax liability. Regarding alimony, the trial court determined that Husband owed Wife $20,000 in alimony *pendente lite* for the period from August, 1998, to May, 1999.[1] The trial court decreed that from May, 1999, forward, Husband would be obligated to pay Wife $500 per month as alimony "*in futuro*."[2]

Husband appeals, arguing that the trial court erred (1) in determining that alimony *pendente lite* was due from June, 1997, to May, 1999; (2) in determining that alimony *pendente lite* was due from May, 1999, until the entry of the divorce judgment; and (3) in awarding Wife alimony in *futuro*.

II.

The amount and duration of alimony are issues with respect to which the trial court exercises wide discretion. *Garfinkel v. Garfinkel,* 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996). In making an alimony determination, a court should be guided by the factors set forth in T.C.A. § 36-5-101(d)(1)(A)-(L)(2001). In making an alimony determination, courts most often consider the needs of the requesting spouse and the obligor spouse's ability to pay. *See Mitts v. Mitts,* 39 S.W.3d 142, 146 (Tenn. Ct. App. 2000), *perm. app. denied* March 5, 2001. Additionally, the fault of the

---

[1]Husband was given a credit toward this amount for $1,200 paid after May, 1999.

[2]Although referred to as an award of alimony *in futuro*, at least part of this award – from May, 1999, until the entry of the judgment of divorce in Feburary, 2001 – is more appropriately labeled as alimony *pendente lite*.

obligor spouse is a common factor.  *See **Bull v. Bull,*** 729 S.W.2d 673, 675 (Tenn. Ct. App. 1987).
The amount of alimony should be such "that the party obtaining the divorce [is not] left in a worse
financial situation than he or she had before the opposite party's misconduct brought about the
divorce."  ***Shackleford v. Shackleford,*** 611 S.W.2d 598, 601 (Tenn. Ct. App. 1980).

T.C.A. § 36-5-101 clearly reflects a legislative preference for an award of rehabilitative
alimony.  *See* T.C.A. § 36-5-101(d)(1).  "The purpose of rehabilitative support is to enable the
disadvantaged spouse to acquire additional job skills, education, or training that will enable him or
her to be more self-sufficient."  ***Anderton v. Anderton,*** 988 S.W.2d 675, 682 (Tenn. Ct. App. 1998).
Where rehabilitation is not feasible, however, "courts may still award long-term support and
maintenance until remarriage or death of the recipient," ***Isbell v. Isbell,*** 816 S.W.2d 735, 739 (Tenn.
1991), because long-term alimony is designed "to provide support to a disadvantaged spouse who
is unable to achieve some degree of self-sufficiency."  ***Anderton,*** 988 S.W.2d at 682.  A court may
award long-term alimony as "closing in money" to enable the recipient spouse to more closely
approach his or her pre-divorce standard of living. *See **Aaron v. Aaron,*** 909 S.W.2d 408, 411 (Tenn.
1995).

III.

We first address the award of *pendente lite* support for the period from June, 1997, the date
of the initial award, until May, 1999, the date of Husband's petition to modify.  Husband argues that
the initial award of temporary support was, in his words, "not supported by the evidence."  He
further contends that the trial court's modification of the award in August, 1998, was in error
because there was no specific finding of need.

Because the record before us does not contain a transcript or statement of the evidence from
these proceedings, "we must assume that the record, had it been preserved, would have contained
sufficient evidence to support the trial court's factual findings."  ***Sherrod v. Wix,*** 849 S.W.2d 780,
783 (Tenn. Ct. App. 1992).  Accordingly, this issue is found adversely to Husband.

We will next address the trial court's modification of the *pendente lite* award effective May,
1999, and the award of alimony *in futuro*.  The trial court modified the temporary support award,
reducing it to $500 per month.  The alimony *in futuro* award was also set at this amount.  Husband
contends on appeal that neither of these awards was warranted because, so the argument goes, Wife
did not demonstrate the requisite need and Husband did not have the ability to pay.

Implicit in the trial court's award of alimony *in futuro* are findings that Wife is economically
disadvantaged relative to Husband and that she cannot be rehabilitated.  Upon reviewing the record,
we cannot say that the evidence preponderates against these implicit findings.  As the trial court
noted, the parties "lived out of the business and used business funds to pay personal expenses"
during the marriage; this, coupled with the lack of income tax returns for several years, make it
difficult to determine the income of the parties prior to the divorce.  Judging from the assets
accumulated by the parties, however, it appears that the parties had a comfortable lifestyle during
the marriage.  Currently, Wife earns $32,600 annually as a public school teacher.  She submitted an

income and expense statement indicating that she has expenses of $4,260 per month. Husband currently works for another sign company and earns $25,992 annually; however, the evidence adduced at trial indicates that Husband had, until recently, been on a pace to earn between $40,000 and $45,000 per year. Based upon this evidence, we cannot say that the trial court erred in finding that Wife was economically disadvantaged relative to Husband.

Upon reviewing the record, we cannot say that the trial court abused its discretion in awarding Wife alimony *pendente lite* and alimony *in futuro* of $500 per month. The trial court found that Husband's inappropriate marital conduct precipitated this divorce. Additionally, this was a marriage of long duration, during which both parties made substantial contributions to their sign business. Because of the parties' debts and tax liabilities, however, there are no significant assets, marital or otherwise, out of which Wife could supplement her income or provide for retirement. We find that an award of $500 alimony *in futuro* will allow Wife to more closely approach her standard of living prior to the divorce. We further find that the evidence does not preponderate against the trial court's determination that Husband has the ability to pay such an award. Accordingly, we affirm the award of alimony as determined by the trial court.

IV.

The judgment of the trial court is affirmed. This case is remanded for enforcement of the judgment and collection of costs assessed below, all pursuant to applicable law. Costs on appeal are taxed to the appellant, James F. Burns.

_____
CHARLES D. SUSANO, JR., JUDGE