IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 16, 2004 Session

# WANDA GAIL SANDLIN v. GEORGE SAMUEL SANDLIN

**Direct Appeal from the Chancery Court for Putnam County**
**No. 2001-318     Vernon Neal, Chancellor**

---

**No. M2003-00775-COA-R3-CV - Filed June 3, 2004**

---

Wife filed for divorce alleging irreconcilable differences or, in the alternative, that  Husband was guilty of inappropriate marital conduct.  The trial court granted Wife an absolute divorce on the basis of Husband's stipulated inappropriate marital conduct.  The trial court further ordered a distribution of marital property and debt, awarded wife alimony *in futuro* and attorney's fees, and required Husband to maintain a life insurance policy to secure his alimony obligation.  Husband appeals.  We affirm the award of alimony *in futuro,* distribution of marital property and debt, and the award of attorney's fees as alimony *in solido*.  However, we vacate the requirement to provide life insurance and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in part;**
**Vacated in part; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Allison M. Barker, Crossville, Tennessee, for the Appellant, George Samuel Sandlin.

Henry D. Fincher, Cookeville, Tennessee, for the Appellee, Wanda G. Sandlin.

## OPINION

Wanda G. Sandlin (Wife) and George Samuel Sandlin (Husband, or collectively with Wife as the parties) were married for twenty-five years.  On November 5, 2001, Wife filed a complaint for divorce alleging irreconcilable differences and inappropriate marital conduct committed by the Husband.  The parties have two children, one of which was a minor at the time of the divorce.  Both parties have college degrees.  Husband is a C.P.A. and owns an accounting practice.  The trial court found Husband's annual income was between $80,000 to $90,000.  Wife has been employed as a secretary, flower shop attendant, owner of an antique booth and a teacher. However, she has not renewed her teaching license since its 1995 expiration.  Wife

testified that she never sought full-time employment since 1985 because Husband made enough money that she did not have to work. Wife also presented expert testimony at trial of the depression that she has experienced since college, but as she testified, the depression has been exacerbated because of the parties' separation.

The divorce was tried on December 3, 2002. At trial, the parties stipulated to Husband's marital fault. The final decree was entered on January 27, 2003. In the decree, the trial court stated that "[t]he Court has observed [Wife] in Court, and at times appears to be crying, sometimes in a trance, and sometimes asleep." Accordingly, based upon the trial court's finding that Wife had $2,500 per month in need and an ability to earn $500.00 per month, the trial court awarded Wife $2,000 a month as alimony *in futuro*. The court also found that:

> [Wife] should reimburse [Husband] approximately Nine Thousand Dollars ($9,000.00) in back credit card expenses. The Court also finds that [Wife] has incurred reasonable and necessary attorney['s] fees of approximately Nine Thousand Dollar[s] ($9,000.00) and that [Husband] should pay these fees as alimony *in solido*. Rather than make separate awards, the Court decrees that [Husband] is not entitled to and [sic] re-payment of credit card expenses, and [Wife] shall bear attorney['s] fees incurred in this matter thus far.

Husband was also ordered to maintain a life insurance policy in the amount of $250,000 to secure his alimony obligation.

As for property distribution, the parties stipulated that the value of the parties' home was between $650,000 and $750,000 with an outstanding mortgage of $208,500. Of that mortgage, $175,000 was owed to Husband's mother and $33,500 was owed to Wife's father. The court ordered that the marital home be sold upon the minor child reaching the age of majority. Until that time, Husband was to continue paying the mortgage owed to his mother, and Wife was to continue paying the mortgage owed to her father with an equal division of taxes and insurance. Upon the sale of the home, the parties would equally divide the proceeds. The court found the marital interest in the building of Husband's accounting business to be $92,500. The court ordered Husband to buy-out Wife's interest in the building, $46,250. The parties stipulated to an equal division of the parties' retirement accounts worth $16,000. The Husband was awarded a 1999 Lincoln, which carries an indebtedness of $17,600.00 and Wife was awarded a 1990 Lincoln, valued at $1,500. Husband filed his notice of appeal on February 19, 2003.

## Presented

Husband appeals and raises the following issues, as we restate them, for our review:

1.      Whether the trial court erred in awarding alimony *in futuro* to Wife and whether that award was excessive.

2.      Whether the amount of life insurance Husband was ordered to pay is excessive.

3.      Whether the trial court erred in dividing the payments for the marital home pending its sale.

4.      Whether the trial court erred in awarding attorney's fees to Wife as alimony *in solido*.

Wife appeals and raises the following additional issues, as we restate them, for our review:

1.      Whether the award of alimony *in futuro* to Wife is too low.

2.      Whether the trial court erred in its distribution of the marital home.

3.      Whether the Wife is entitled to attorney's fees for this appeal.

## Standard of Review

"The amount of alimony to be allowed in any case is a matter for the discretion of the trial court in view of the particular circumstances, for the appellate courts are disinclined to review such discretion except in cases where it has manifestly been abused." *Hanover v. Hanover*, 775 S.W.2d 612, 617 (Tenn. Ct. App. 1987) (citing *Ingram v. Ingram*, 721 S.W.2d 262 (Tenn. Ct. App. 1986)). "This Court customarily gives great weight to decisions of the trial court in dividing marital estates and we are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results from some error of law or misapplication of statutory requirements and procedures." *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996) (citing *Wade v. Wade*, 897 S.W.2d 702, 715 (Tenn. Ct. App. 1994)). The trial court's award of attorney's fees "to a party in a divorce proceeding is within the sound discretion of the trial court and will not be disturbed upon appeal unless the evidence preponderates against such a decision" *Storey v. Storey*, 835 S.W.2d 593, 597 (Tenn. Ct. App. 1992) (citing *Batson v. Batson*, 769 S.W.2d 849, 862 (Tenn. Ct. App. 1988).

## Alimony *in Futuro*

Husband contends that the trial court erred in awarding alimony *in futuro* rather than rehabilitative alimony and that such award was excessive. Tennessee Code Annotated § 36-5-101(d) (2001) governs spousal support awards and provides:

(d)(1) . . . In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant

factors, including:

> (A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
>
> (B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
>
> (C) The duration of the marriage;
>
> (D) The age and mental condition of each party;
>
> (E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
>
> (F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;
>
> (G) The separate assets of each party, both real and personal, tangible and intangible;
>
> (H) The provisions made with regard to the marital property as defined in § 36-4-121;
>
> (I) The standard of living of the parties established during the marriage;
>
> (J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;
>
> (K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and
>
> (L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-101(d)(1) (2001).[1]  Further, "[i]n applying T.C.A. § 35-5-101(d), our courts have said, 'The most common factors considered by the courts are: (1) the need of the innocent spouse; (2) the fault of the obligor spouse; and (3) the obligor spouse's ability to provide support and maintenance.'"  *Hawkins v. Hawkins*, 883 S.W.2d 622, 625 (Tenn. Ct. App. 1994) (quoting *Bull v. Bull*, 729 S.W.2d 673, 675 (Tenn. Ct. App. 1987)).

Husband contends the trial court erred in awarding alimony *in futuro* rather than rehabilitative alimony.  In support of his argument, Husband first relies upon *Crabtree v. Crabtree*, 16 S.W. 3d 356 (Tenn. 2000).  In *Crabtree*, the court determined that it was error for the lower court to award alimony *in futuro* following a period of rehabilitative alimony. *Crabtree*, 16 S.W.3d at 361.  In that case, the Tennessee Supreme Court found that the trial court

---

[1] Sections 36-5-101(d)(1) and (e) were amended in 2003 but are inapplicable to this case as the final judgment was entered before the effective dates of the amendment.  Tenn. Code Ann. § 36-5-101 (2003) (amendments).

did not make any findings of fact with regard to the factors considered for alimony awards. *Id*. at 360. Rather, the court determined, based upon the record, that the Wife was capable of rehabilitation and that her earning capacity exceeded her then current earnings. *Id*. The court also mentioned that the Wife suffered from no health problems. *Id*. Second, Husband relies upon *Robertson v. Robertson*, 76 S.W.3d 337 (Tenn. 2002). In *Robertson*, the Tennessee Supreme Court reversed this Court's award of alimony *in futuro* and reinstated the trial court's award of rehabilitative alimony. *Id*. at 343. In its decision, the court focused on the fact that the Wife had a college education, new employment, and did not suffer from any mental or physical disability. *Id*.

The facts of this case are readily distinguishable from those in *Crabtree* and *Robertson*. In this case, the trial court made a specific finding that Wife "has been diagnosed with depression that prevents her from working full-time." Further, based upon its observation of Wife and the expert testimony presented to the court, the trial court found "that rehabilitation is not possible under all the circumstances of the case, including [Wife's] medical condition, her lack of any teaching certificate and the difficulty of obtaining teaching positions."

Further, Husband stipulated to his ability to pay commensurate with Wife's need. The trial court found Husband's income was between $80,000 and $90,000. The parties also stipulated to Husband's inappropriate marital conduct. As for Wife's need, the trial court found that she had a monthly need of $2,500 to $2,600 and an ability to earn $500 a month. Accordingly, the trial court awarded Wife alimony *in futuro* in the amount of $2,000 a month. After reviewing the evidence, we hold that the trial court did not abuse its discretion in the award of alimony. While Wife raises the issue of whether the alimony award was too low, we agree with her concession that the trial court was within its wide discretion in its award. Accordingly, we affirm the trial court's award of alimony *in futuro* in the amount of $2,000 a month.

### Life Insurance

Husband argues that the amount of life insurance that the trial court ordered him to maintain in order to secure his alimony obligation is excessive. Husband bases his argument on the contention that he was not provided an opportunity to present evidence on the amount of life insurance he could afford to pay. Our review of the record reveals that Wife never requested a life insurance award in her complaint or at trial. Had she done so, Husband would have been placed on notice of the possibility of the award rather than first learning of the life insurance award in the final decree.

Tennessee Code Annotated § 36-5-101(g) allows the court to "direct either . . . part[y] to designate the other party and the children as beneficiaries under any existing policies insuring the life of either party . . . or the purchase and maintenance of life insurance." This statute "specifically left the determination of whether to order a party to procure insurance for the benefit of the other party . . . to the discretion of the trial court." *Young v. Young*, 972 S.W.2d 386, 392 (Tenn. Ct. App. 1997). However, we believe that fairness dictates that this cause be

remanded to the trial court for the parties to present evidence on the limited issue of life insurance. *Cain v. Cain*, W2003-00563-COA-R3-CV, 2004 WL 404489, at *5 (Tenn. Ct. App. Mar. 3, 2004) (*no perm. app. filed*).

## Marital Debt

Husband contends that the trial court erred in its division of the mortgage payments of the marital home pending its sale.[2] "This Court customarily gives great weight to decisions of the trial court in dividing marital estates and we are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results from some error of law or misapplication of statutory requirements and procedures." *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996) (citing *Wade v. Wade*, 897 S.W.2d 702, 715 (Tenn. Ct. App. 1994)). "Tennessee courts should use the four factors listed in *Mondelli* as guidelines in the equitable distribution of marital debt: (1) the debt's purpose; (2) which party incurred the debt; (3) which party benefitted from incurring the debt; and (4) which party is best able to repay the debt." *Alford v. Alford*, 120 S.W.3d 810, 814 (Tenn. 2003) (citing *Mondelli v. Howard*, 780 S.W.2d 769, 773 (Tenn. Ct. App. 1989)). Further, an equitable distribution is not necessarily an equal one. *See Barnhill v. Barnhill*, 826 S.W.2d 443, 449 (Tenn. Ct. App. 1996).

In this case, the parties stipulated to the amount of debt on the marital home, $208,500. Of that amount, $175,000 was owed to Husband's mother with the remaining $33,500 owed to Wife's father. The trial court ordered Husband to repay his mother the $175,000 and Wife to repay her father the $33,500. The trial court found Husband's income to be between $80,000 and $90,000. The trial court also found that Wife was not capable of full time employment and estimated her income to be $500 a month. Based upon these facts along with the convenience of the parties being able to re-pay their respective parents, we cannot find that the trial court erred in its distribution of the mortgage payments of the marital home pending its sale. Accordingly, we affirm the trial court's distribution of the mortgage payments.

## Property Distribution

Wife contends that the trial court erred in its equitable distribution of marital property by only awarding her half of the equity in the marital home.[3] Wife contends that Husband raised the indebtedness owed to his mother on the home from $140,000 to $175,000 in August of 2001, and as a result Wife should be awarded more equity in the home. As previously mentioned, the trial court ordered Husband to pay off the $175,000 mortgage owed to his mother while Wife would only pay the $33,550 owed to her father. Therefore, Husband received no windfall from the extra

---

[2]Husband raises the issue of the distribution of marital debt but failed to provide in his brief an orderly tabulation of the information pertinent to that issue as required by Rule 7(b) of the Rules of the Court of Appeals of Tennessee.

[3]Wife raises the additional issue of the distribution of marital property but failed to provide in her brief a Rule 7 schedule as required by Rule 7 of the Rules of the Court of Appeals of Tennessee.

loans received from his mother as he is required to pay those back. Accordingly, we affirm the trial court's distribution of marital property.

## Attorney's Fees

Husband argues that the trial court erred in awarding Wife her attorney's fees because, as he contends, she had sufficient resources from which she could pay her attorney's fees. An award of attorney's fees is considered to be alimony or spousal support. *Martin v. Martin*, M2002-02350-COA-R3-CV, 2004 WL 833083, at *10 (Tenn. Ct. App. Apr. 16, 2004) (*no perm. app. filed*) (citing *Yount v. Yount*, 91 S.W.3d 777, 783 (Tenn. Ct. App. 2002)). As alimony, an award of attorney's fees is subject to the same statutory factors enumerated in Tenn. Code Ann. § 36-5-101(d)(1) (2001). *Martin*, 2004 WL 833083, at *10. Among the factors, "the two considered to be the most important are the disadvantaged spouse's need and the obligor spouse's ability to pay." *Id.* at *11 (citing *Robertson v. Robertson*, 76 S.W.3d 337, 338 (Tenn. 2002); *Waters v. Waters*, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999)). "'[T]he allowance of attorney's fees is largely in the discretion of the trial court, and the appellate court will not interfere except upon a clear showing of abuse of that discretion.'" *Id.* (quoting *Aaron v. Aaron*, 909 S.W.2d 408, 411 (Tenn. 1995)).

In this case, the trial court in essence awarded Wife her attorney's fees by requiring Husband to pay the $9,000 in credit card expenses that Wife incurred to pay her attorney's fees. As previously mentioned, the trial court estimated Husband's income to be between $80,000 and $90,000. The trial court estimated Wife's potential income based upon her earning capacity and depression to be $500 a month. Further, the Husband stipulated to his inappropriate marital conduct. Based upon these facts, we find that the trial court did not abuse its discretion in its award of attorney's fees as alimony *in solido*. Accordingly, we affirm the trial court's award of Wife's attorney's fees incurred at trial.

Wife asks this Court for an award of attorney's fees incurred on this appeal. "It is clear that, if proper, courts have the authority to award additional attorney's fees incurred on appeal." *Wills v. Wills*, M2002-02167-COA-R3-CV, 2003 WL 22209357, at *4 (Tenn. Ct. App. Sept. 25, 2003) (*no perm. app. filed*) (citing *Seaton v. Seaton*, 516 S.W.2d 91, 93 (Tenn. 1974)). While it was not error for the trial court to award attorney's fees incurred at trial, we believe that Wife has sufficient assets from the property distribution, specifically the $46,250 that the Husband was ordered to pay to buy out Wife's interest in the accounting business building, with which she can pay her attorney's fees incurred on this appeal.

## Conclusion

In light of the foregoing, we affirm the trial court's distribution of marital property, marital debt, award of alimony *in futuro*, and the award of attorney's fees as alimony *in solido*. Wife's request for attorney's fees incurred on this appeal is denied. The trial court's award of life insurance is vacated and remanded for further proceedings consistent with this opinion.

Costs of this appeal are taxed to the Appellant, George Samuel Sandlin, and his surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE